IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| TAMARA B.,[1] | Case No. 6:21-cv-00070-JR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

RUSSO, Magistrate Judge:

Plaintiff Tamara B. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits and Social Security Income under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed, and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

Born in 1965, plaintiff alleges disability beginning October 2, 2018, due to spinal, shoulder, and knee pain, as well as depression and anxiety. Tr. 293. Her applications were denied initially and upon reconsideration. Tr. 183, 188, 195, 198. On July 14, 2020, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 67-118. On July 28, 2020, the ALJ issued a decision finding plaintiff not disabled. Tr. 13-29. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 17. At step two, the ALJ determined the following impairments were medically determinable and severe: "left shoulder derangement, including AC joint arthritis, subacromial impingement syndrome, and partial thickness rotator cuff tear; degenerative disc disease cervical spine with radiculopathy showing degenerative joint disease with chondromalacia and lateral meniscus tear; and history of chondromalacia patella of left knee." Tr. 17. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 19.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work except:

> [She] can perform only occasional pushing/pulling with the left (non-dominant) upper extremity; occasional climbing ramps/stairs; never climbing ladders, ropes, scaffolds; occasional kneeling and crouching; no crawling; no overhead reaching with left upper extremity; occasional front and lateral reaching with the left upper

Page 2 – OPINION AND ORDER

extremity; and no exposure to vibrations or hazards, such as dangerous machinery or unprotected heights.

Tr. 21.

At step four, the ALJ determined plaintiff was able to perform past relevant work as a telephone operator as actually and generally performed. Tr. 26-27. In the alternative, the ALJ concluded at step five that there were a significant number of jobs in the national economy plaintiff could perform despite her impairments through April 24, 2020, at which point plaintiff changed age categories and would be entitled to benefits under the Medical Vocational Guidelines "but [for the fact that] the Step 4 denial still remains." Tr. 27-28.

## DISCUSSION

Plaintiff challenges the ALJ's step four finding. Specifically, plaintiff argues (1) she did not work as a telephone operator at substantial gainful levels; and (2) her past relevant work was performed under special conditions. Pl.'s Opening Br. 7 (doc. 14). Alternatively, plaintiff argues that the record is ambiguous and warrants further development. *Id.* at 8.

**I.    Substantial Gainful Activity**

At step four, the plaintiff bears the burden of establishing that her impairments prevent her from doing past relevant work. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). Past relevant work is defined as work the plaintiff actually performed within the past fifteen years at substantial gainful levels and that lasted long enough for the plaintiff to learn how do it. 20 C.F.R. §§ 404.1560(b), 416,960(b), 416.965. In evaluating substantial gainful activity, the Commissioner's primary consideration is the plaintiff's earnings. 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1). Generally, the Commissioner will not consider factors outside of the plaintiff's earnings unless they were based on subsidized work, special working conditions, or the plaintiff's involvement in additional substantial gainful activities. *See generally* 20 C.F.R. §§ 404.1574(a), 416.974(a).

Page 3 – OPINION AND ORDER

Here, plaintiff argues that she only worked four to six hours per day, four to six days per week, during 2011 and 2012 while employed at Cabela's Sporting Goods, and that only one-third to one-half of those hours were spent working as a telephone operator. Her remaining duties were varied and included "dispersing and collecting equipment to and from employees." Pl.'s Reply Br. 5 (doc. 16). Based on these other job functions, plaintiff asserts that her earnings should undergo a pro rata division and, as a result, her telephone operator work did not meet substantial gainful levels. Pl.'s Opening Br. 5-6 (doc. 14).

Initially, plaintiff has not cited to, and the Court is not aware of, any authority that supports dividing earnings in the manner advocated. In addition, plaintiff has not identified sufficient evidence to rebut the presumption that she engaged in substantial gainful activity as a telephone operator. When testifying about her position at Cabela's, plaintiff stated she "didn't really walk around," and "the only time [she] would stand up is when . . . guests would come in, and [she] would give them their badge, and then [she would] go back to sitting down at the computer." Tr. 100. Plaintiff further clarified that she was "basically sitting by the phone [and] would get up when the phones weren't ringing to get equipment" from the cupboard near her desk. Tr. 100-01. Thus, plaintiff's own testimony demonstrates that she was performing work consistent with the occupation of telephone operator.

Moreover, even if the Court were inclined to parse out plaintiff's job functions when reviewing her monthly earnings, she still meets the statutory threshold for substantial gainful activity. Plaintiff earned $13,207 between March and December 2011, and $13,799 between January and October 2012, at a pay rate of $9.74 per hour while employed at Cabela's. Tr. 268-69, 271, 322. Accordingly, plaintiff worked approximately 34 hours per week on average. If the Court were to assume (consistent with her opening brief) that plaintiff devoted two hours of each

shift to handling equipment by standing or walking – which, as noted above, is inconsistent with her hearing testimony – her earnings related to telephone operator tasks would still meet the substantial gainful limits of $1,000 per month in 2011.[2] Therefore, the ALJ did not err in determining that plaintiff's past relevant work as a telephone operator met substantial gainful levels.

## II.    Special Conditions

Next, plaintiff asserts the ALJ's finding that she can perform past relevant work is erroneous because the work was conducted under "special conditions." Pl.'s Opening Br. 7 (doc. 14). The presence of special conditions, "such as work done in a sheltered workshop or as a patient in a hospital," precludes past work from qualifying as substantial gainful activity. 20 C.F.R. §§ 404.1570(c)(3), 416.973(c). Relatively minor accommodations by an employer do not establish special conditions. *Page v. Berryhill*, 2018 WL 1865867 *2 (D. Or. Apr. 18, 2018); *Katz v. Sec'y of Health & Human Serv.*, 972 F.2d 290, 294 (9th Cir. 1992). "The critical inquiry is whether the special conditions have a significant impact on the value of the work performed." *Reeves v. Colvin*, 544 F.App'x 786, 788 (9th Cir. 2013). For example, "if you are unable . . . to do ordinary or simple tasks [] without more supervision or assistance than is usually given other people" or the "work [] involves minimal duties that make little or no demands on you," then evidence may show that past work was completed under special conditions. 20 C.F.R. §§ 404.1572(a), 416.973(b).

---

[2] Plaintiff acknowledges monthly earnings of approximately $1,423 while employed at Cabela's. Pl.'s Opening Br. 6 (doc. 14). According to plaintiff, "[o]nly one half of those earnings" in the event of a four hour shift "(or, 6-hour days, two thirds of those earnings), were earnings from being a telephone operator," which equates to "between $711 a month to $948 a month." *Id.* Thus, not only is plaintiff's own approximation very close to substantial gainful levels, but it is also based on four to six hour shifts. Yet, as addressed herein, plaintiff's verified earnings statement establishes that she worked seven hour shifts on average.

Page 5 – OPINION AND ORDER

Plaintiff's opening brief does not provide any argument or evidence relating to the existence of special conditions. The sum total of her argument simply states that special conditions were present, without any analysis or citation to what those conditions were. *See generally* Pl.'s Opening Br. (doc. 14). For the first time in her reply brief, plaintiff points to evidence submitted to the Appeals Council. Pl.'s Reply Br. 2 (doc. 16). This evidence is comprised of a return work/school form; a statement from a Pediatric Nurse Practitioner; an OSHA Ergonomic Workstation eTool Evaluation checklist; and her personal file from Cabela's spanning the duration of her employment. Tr. 2. These documents reveal that plaintiff received accommodations at Cabela's in the form of an ergonomic chair and a sit-stand desk.

The Court finds these workplace accommodations do not rise to the level of "special conditions." Plaintiff testified that, in the course of her regular work at Cabela's, she managed a storage cupboard and equipment access for demonstrators, handled the disbursement of badges to employees, and managed her own work at the computer. Tr. 100. She does not indicate that she required special assistance or equipment for her impairments, received special work arrangements from her employer, or worked at a lower productivity level than her coworkers. *See* 20 C.F.R. §§ 404.1572(c), 416.973(c). While plaintiff maintains her shifts were usually four hours long, these work hours are not sufficient to establish that plaintiff's past work was performed under special conditions, especially given her undisputed earnings record, as addressed above. *See Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. 1990) (claimant's approximately five-hour shifts did not constitute special conditions). Thus, plaintiff has again failed to meet her burden.

In addition, nothing in the record suggests that the same workplace accommodations would be unavailable if plaintiff returned to her past relevant work. The VE testified that a hypothetical individual with plaintiff's limitations could continue to perform work as a telephone operator. Tr.

103, 106, 111-12. Although the VE acknowledged that the DOT did not differentiate between the types of reaching required for the position, based on her professional training and experience, she testified that the typical occupational reaching requirements would be consistent with the ALJ's RFC. Tr. 19, 105-06, 108, 112-13. Further, the VE testified "there is a trend in the work environment towards allowing a sit-stand option" and that "[sixty] percent of employers are offering a sit-stand option as a health benefit and . . . not as an accommodation." Tr. 114. Given the VE's statements and the lack of evidence to the contrary, the Court finds that plaintiff's past relevant work was not conducted under special conditions.

### III.   Duty to Develop the Record

"An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massinari*, 276 F.3d 453, 459-60 (9th Cir. 1999).

Plaintiff failed to identify any ambiguity or inadequacy in the record. In fact, her discussion of this issue is boilerplate and does not reference any facts or evidence particular to this case. Assuming that plaintiff is referring to her job functions at Cabela's or earnings, there is nothing to indicate that the record is ambiguous. As discussed herein, even with the additional evidence submitted to the Appeals Council, the record does not demonstrate that plaintiff performed her past relevant work at less than substantial gainful levels or under special conditions. The ALJ's duty to develop the record has not been triggered.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 23rd day of February, 2022.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge